UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, et al., | ) ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 1:24-cv-57 (PTG/WEF) |
| v. | ) ) ) |
| AIR DESIGN SOLUTIONS, INC., | ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC") (collectively referred to as "Plaintiffs" or "the Funds"), filed this action pursuant to the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA") and the Labor Management Relations Act of 1947, *as amended* ("LMRA"). Plaintiffs, having properly served the Complaint and Summons on the Defendant, Air Design Solutions, Inc. (hereinafter referred to as "Defendant" or "ADS"), and the Clerk of Court having entered default against Defendant, now seek entry of a default judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b)(2). (Dkts. 4, 7, 8, 9). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned Magistrate Judge is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all

1

interested parties. For the reasons set forth below, the undersigned recommends granting Plaintiffs' Motion for Default Judgment and awarding the relief sought.[1]

**Procedural History**

On January 11, 2024, Plaintiffs filed a Complaint against Defendant, a California based business, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, as well as Section 301(a) of the LMRA, 29 U.S.C. § 185(a), which govern suits among parties to enforce provisions of their collective bargaining agreements. (Dkt. 1, "Compl." ¶¶ 1, 10). Specifically, Plaintiffs allege that Defendant failed to comply with a requirement of the collective bargaining agreement it reached with the International Association of Sheet Metal, Air, Rail and Transportation Union, a labor organization representing Defendant's employees, to provide payroll information to Plaintiffs necessary to determine the amount of Defendant's required contributions to covered employees' retirement and benefit plans. (*Id.* ¶¶ 11, 12). Plaintiffs further allege that the collective bargaining agreement reached between Defendant and the union incorporates the "terms and conditions of the Trust Agreements establishing the Funds" as well as "NPF's Procedures for the Collection of Contributions both [of which] provide that [Plaintiffs] may audit [Defendant] for the purpose of assuring the accuracy of [monthly payroll] reports [Defendant was required to provide to Plaintiffs] and ensuring that [Defendant] has remitted the appropriate amount of contributions to [Plaintiffs]." (*Id.* ¶¶ 13, 15).

---

[1] The relevant filings before the Court include Plaintiff's Complaint ("Compl.") (Dkt. 1); Amended Complaint ("Am. Compl.") (Dkt. 5); Executed Summons and Complaint (Dkt. 4); Plaintiffs' Request for Entry of Default (Dkt. 6); Clerk's Entry of Default (Dkt. 7); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 8); Brief in Support of Plaintiff's Motion for Default Judgment ("Mem. Supp.") (Dkt. 9); Declaration of Ellen Odell ("Odell Decl.") (Dkt. 9-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 9-2); Supplemental Brief in Support of Plaintiff's Motion for Default Judgment ("Suppl. Br.") (Dkt. 14); and all attachments and exhibits submitted with those filings.

Pursuant to this contractual authority, Plaintiffs sought to audit Defendant's payroll records for the time period from July 1, 2017 to December 31, 2022.  (*Id*. ¶ 17).  Defendant failed to provide the requested records and refused to undergo an audit.  (*Id*.)[2]

On February 7, 2024, Plaintiffs filed an Amended Complaint.  (Dkt. 5, "Am. Compl."). The only material change in the Amended Complaint is that Plaintiffs clarified the relief they seek at this time is an order compelling Defendant to undergo an audit to determine whether Defendant owes additional contributions to Plaintiffs on behalf of Defendant's covered employees.  (*Id*. ¶ 18). In the Amended Complaint, Plaintiff states that "should an audit reveal that Defendant failed to remit all required contributions on behalf of its employees" then pursuant to the contracts as well as the relevant provisions of ERISA and the LMRA, Plaintiffs are entitled to (1) interest on the delinquent contributions at a rate of .0233% per day, compounded daily; (2) liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that Defendant fails to pay within 30 days after the due date, but pays before any lawsuit is filed; (3) liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and (4) attorneys' fees and costs incurred by Plaintiffs in pursuing the delinquent amounts and enforcing the terms of the contracts. (*Id*.)

The Summons, Complaint, and related materials were served on Defendant on January 17, 2024, in accordance with Fed. R. Civ. P. 4(c), (e) and (h).  (Dkts. 4, 14, 14-1).  Defendant's Answer

---

[2]     Plaintiffs do not specifically allege that Defendant failed to provide the monthly payroll information as required by the collective bargaining agreement, but such an inference is reasonable given that Defendant refused to provide the information in response to Plaintiffs' demand for an audit.

or other responsive pleading was initially due on February 7, 2024.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  However, on February 7, 2024, Plaintiffs served the Amended Complaint on Defendant which extended Defendant's time to file an Answer or other responsive pleading to February 21, 2024.  *See* Fed. R. Civ. P. 15(a)(3).  A review of the record confirms that to date Defendant has not filed an Answer, other responsive pleading, or appeared in this case in any manner.

On March 7, 2024, the Clerk of Court entered default against Defendant.  (Dkt. 7).  Also on March 7, 2024, Plaintiffs filed their Motion for Default Judgment along with a memorandum of law and attached exhibits, which were sent by first-class mail, postage prepaid, to Defendant's principal place of business.  (Dkts. 8, 9).  On April 12, 2024, Plaintiffs' Motion for Default Judgment was heard before the undersigned.  (Dkt. 12).  Plaintiffs appeared through counsel, and no one appeared on behalf of Defendant.  At the hearing, the undersigned ordered Plaintiffs' counsel to file a declaration clarifying inconsistent dates noted in the original Proof of Service filed as docket entry 4.  (*Id.*)  On April 17, 2024, Plaintiffs' counsel filed a supplemental memorandum and declaration correcting the date the original Complaint was served on Defendant.  (Dkt. 14).  The undersigned then took this matter under advisement to prepare this Report and Recommendation for the Court.

## Jurisdiction and Venue

Before the Court can enter default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) venue must be proper in this judicial district.

### Subject Matter Jurisdiction

First, the undersigned finds the Court has subject-matter jurisdiction over this case.  A federal district court has subject-matter jurisdiction over ERISA actions pursuant to the

4

jurisdictional provisions in 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).  Further, a federal district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In this case, Plaintiffs assert claims pursuant to ERISA and the LMRA, both of which are federal statutes.  (Am. Compl. ¶ 1).   Accordingly, this Court has subject-matter jurisdiction over the claims in this action.

### Personal Jurisdiction

Second, the undersigned finds the Court has personal jurisdiction over Defendant.  Due to ERISA's nationwide service of process provision, personal jurisdiction is proper if a defendant has sufficient national contacts with the United States and it comports with the Fifth Amendment.  *See* 29 U.S.C. 1132(e)(2); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443–44 (4th Cir. 2015) (citation omitted) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. May 15, 1997).  As discussed further herein, Plaintiffs served Defendant pursuant to Federal Rule of Civil Procedure 4.  (Dkts. 4, 14, 14-1).  Further, Defendant is incorporated in California and its principal place of business is in El Monte, California.  (Am. Compl. ¶ 10).  Therefore, Defendant has sufficient national contacts with the United States, and as a result, this Court may properly exercise personal jurisdiction over Defendant.

### Venue

Lastly, the undersigned finds venue to be proper in this judicial district.  For ERISA actions, venue is proper in the federal judicial district where the plan is administered.  29 U.S.C. §

1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."). Here, venue is proper because the Funds are administered in Falls Church, Virginia, within the Eastern District of Virginia. (Am. Compl. ¶ 3).

## Service of Process

Next, before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. On January 19, 2024, Plaintiffs filed a Proof of Service reflecting that a copy of the Summons and the original Complaint were personally served on the owner of ADS, the defendant company. (Dkt. 4).[3] Service of process in this manner satisfies Fed. R. Civ. P. 4(h)(1)(B), which provides, in relevant part, that service on a corporation may be effected "by delivering a copy of the summons and of the complaint to an officer [or] a managing or general agent." An owner of a company constitutes an officer or a managing or general agent for purposes of service of process. The individual who accepted service on behalf of Defendant did not provide his last name but did state that he was the owner of ADS and that his first name was "Mike." (Dkt. 4). The individual's statement that he was the owner of the defendant company is corroborated by the fact that Plaintiffs' auditors spoke with Miguel "Mike" Sahagan on October 16, 2023, at which time Mr. Sahagan "advised that he would not provide the documentation for the audit" of the defendant company. (Odell Decl. ¶ 24). Moreover, a contract between the Defendant and the union executed in June 2011 was signed by Miguel Sahagan on behalf of the defendant company. (Odell Decl., Exh. 2 at 83). For these reasons, the undersigned finds that the Summons and original Complaint were properly served on the owner of ADS in accordance with Fed. R. Civ. P.

---

[3] The Proof of Service mistakenly identified the date of service as January 27, 2024, when the actual date of service was January 17, 2024. Plaintiffs corrected this error in a subsequent filing. (*See* Dkts. 14, 14-1.)

4(h)(1)(B).

As noted above, Plaintiffs then filed an Amended Complaint on February 7, 2024. (Dkt. 5). Plaintiffs filed the Amended Complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(A) within 21 days of service of the original Complaint on January 17, 2024. The Amended Complaint was served on February 7, 2024, by certified mail sent to Defendant's principal place of business in El Monte, California. (Am. Compl. at 10). Service of an Amended Complaint in this manner is authorized by Fed. R. Civ. P. 5(a)(1)(B), (b)(2)(C), which provides, in relevant part, that serving a pleading filed after the original complaint may be "mail[ed] [] to the person's last known address—in which event service is complete upon mailing."

For these reasons, the undersigned finds that Plaintiffs' service of process on Defendant comports with Fed. R. Civ. P. 4(c); (h)(1)(B) and Fed. R. Civ. P. 5(a)(1)(B), (b)(2)(C), and therefore, Defendant was properly served.

### Facts Deemed Admitted

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. Mar. 26, 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (internal quotation marks and citations omitted)). Here, Plaintiffs have properly pleaded the following facts that occurred during the relevant timeframe alleged in the Amended Complaint, which the undersigned deems admitted.

**The Parties**

Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the

collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in the Amended Complaint. The NPF is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, Virginia 22042. (Am. Compl. ¶ 5).

Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the Trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible employees. ITI, is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of the ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are

"fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2).  The ITI is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, Virginia 22042.  (Am. Compl. ¶ 6).

Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the Trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT is a labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  SMOHIT is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, Virginia 22042.  (Am. Compl. ¶ 7).

Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the Trustees of the National Energy Management Institute Committee. NEMIC is a labor-management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements.  NEMIC is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, Virginia 22042.  (Am. Compl. ¶ 8).

Defendant ADS has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12).  Defendant is incorporated in California with a principal place of business at 2229 Durfee Avenue, Suite H, El Monte, California 91732.  (Am. Compl. ¶ 10).

**Factual Allegations Regarding Liability**

Defendant employed individuals represented for the purpose of collective bargaining by

9

the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union 105 ("the Union"), a labor organization representing employees in an industry affecting interstate commerce. (Am. Compl. ¶ 11).

Defendant was a signatory to, and bound by, a collective bargaining agreement ("CBA") with the Union. Pursuant to the CBA, Defendant was obligated to submit monthly remittance reports and fringe benefit contributions to each Plaintiff for all hours worked or paid on behalf of Defendant's covered employees within the jurisdiction of the Union. (*Id*. ¶ 12). Pursuant to the CBA, Defendant is obligated to abide by the terms and conditions of the Trust Agreements establishing the Plaintiffs' Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Documents"). (*Id*. ¶ 13). Payments due to Plaintiffs are calculated separately for each Plaintiff on remittance reports required to be prepared monthly by each contributing employer. (*Id*. ¶ 14). This is a self-reporting system, and Plaintiffs rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees. (*Id*.)

Article V, Section 3 of the Governing Trust Agreement and Section V of NPF's Procedures for the Collection of Contributions both provide that Plaintiffs may audit a contributing employer for the purposes of assuring the accuracy of reports and ensuring that the employer has remitted the appropriate amount of contributions to Plaintiffs. (Am. Compl. ¶ 15). Specifically, Article V, Section 3 of the Trust Document states:

> The Trustees have the authority to conduct an audit of the entire personnel, payroll wage records encompassing all employees and any job or project information of any Employer for the purposes of assuring the accuracy of reports and Contributions, compliance with any applicable law, and compliance with the terms of the Trust Document . . . or any other document governing the Plan." (*See* Odell Decl., Exh. 7).

10

Similarly, the CBA also addresses Plaintiffs' right to audit Defendant. Addendum 11 to each of the successive CBAs provides:

> So as to comply with applicable State and Federal Law affecting obligations and/or contributions to … Plans accepted and maintained under this Agreement, such employer shall, within (7) days of receipt of a written notice from the joint trustees of such trust fund or Plans requesting access to any and all Employer payroll and other records (including cash disbursement records, invoices and required back-up documentation) necessary for a Public Accountant or Auditor acceptable to the trusts to audit and determine any discrepancy in wages or contributions for which an obligation exists under this or any other Agreement between the Employer and any Local Union of SMWIA, furnish all data, and allow examining and copying of payroll and other records to such representative of the joint trustees after being furnished with such seven (7) day notice. (Odell Decl., Exh. 6 at Add. 11, Sec. 7).

Plaintiffs' auditors sent Defendant a letter on September 13, 2023, requesting an audit for the period of July 1, 2017 through December 31, 2022. (Am. Compl. ¶ 17).[4] Defendant refused to comply with Plaintiffs' audit request and failed to provide the requested records. (*Id.*) On October 16, 2023, Plaintiffs' auditors spoke with Miguel "Mike" Sahagan, an owner of ADS, who stated that Defendant would not provide documentation for the audit. (Odell Decl. ¶ 24).[5] Finally, on December 11, 2023, Plaintiffs sent a demand letter to Defendant through outside counsel. (*Id.* ¶ 25). The demand letter noted, among other things, Plaintiffs' auditors attempt to schedule an audit, Defendant's refusal to submit to an audit, and that Plaintiffs may file a lawsuit to enforce compliance with the audit request. (*Id.*)

## Fed. R. Civ. P. 12(b)(6) Analysis

Before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Fed. R. Civ. P. 12(b)(6) to ensure that the complaint properly states a claim upon

---

[4]  The various contracts requiring Defendant to submit to an audit by Plaintiffs were in effect from July 1, 2017, through December 31, 2022. (Odell Decl. ¶¶ 4–14).

[5]  "Mike" is the same individual who was served a copy of the Summons and Complaint at which time he stated that he was the owner of Defendant ADS. (Dkt. 4).

which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. Feb. 5, 2003) (citations omitted). Here, Plaintiffs have properly alleged a contractual duty by Defendant to contribute to Plaintiffs' Funds on behalf of employee participants and their beneficiaries, to provide Plaintiffs financial and payroll information on a monthly basis to ensure Defendant is making the agreed upon contributions, and, if Defendant violates these contractual duties, Plaintiffs have properly requested remedies provided for in the agreements and authorized by ERISA and the LMRA. Plaintiffs have also properly alleged that this action and the remedies they seek are enforceable under ERISA and the LMRA. For these reasons, the undersigned finds Plaintiffs' Amended Complaint satisfies the requirements of Fed. R. Civ. P. 12(b)(6).

## Plaintiffs' Requested Relief

Plaintiffs request the Court grant relief in two stages. First, Plaintiffs seek injunctive relief requiring Defendant to submit to an audit and for an award of attorneys' fees and costs. (Mem. Supp. at 9–12). Second, Plaintiffs request the Court retain jurisdiction over this matter and, if the audit reveals Defendant made insufficient contributions to the Funds, Plaintiffs be permitted to petition the Court for damages to include delinquent contributions, interest on any delinquent contributions, liquidated damages, as well as any additional attorneys' fees and costs incurred by Plaintiffs. (*Id*.)

### Audit of Defendant's Payroll Information

Plaintiffs have clearly established their contractual right to audit Defendant's payroll information. All relevant contracts were attached as exhibits to Plaintiffs' Brief in Support of Motion for Default Judgment. (Dkts. 9, 9-1). A review of the contracts, including the Trust Agreement and the original CBA, as well as all successor agreements, explicitly require Defendant

to submit an audit. The CBAs were entered in 2011, 2014, 2015, 2020 and 2021 and contain the same audit provision. (Odell Decl., Exhs. 1, 3, 4, 5 and 6 at Add. 11, Sec. 7). The CBAs were in effect from July 1, 2017 through December 31, 2022, which is the time period Plaintiffs are seeking to audit. (*Id*.)

In addition, 29 U.S.C. § 1132(g)(2)(E) of ERISA authorizes injunctive relief under these circumstances. Specifically, the statute provides that when "a judgment in favor of the plan is awarded, the court shall award the plan . . . such other legal or equitable relief as the court deems appropriate." In order to determine whether an injunction is warranted, the Court must consider: (1) the likelihood of success on the merits of the plaintiff's claim (for a preliminary injunction), or the existence of actual success on the merits (for a permanent injunction); (2) the likelihood of irreparable injury to the plaintiff in the absence of an injunction; (3) the likelihood of harm to other interested persons if an injunction is issued; and (4) the public interest in granting versus not granting the injunction. *See, e.g., National Stabilization Agreement of the Sheet Metal Industry Trust Fund v. Indiana Panel & Glass Erectors, Inc.*, 2008 WL 4966896, at *4–5 (E.D. Va. Oct. 21, 2008 (citing *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987) and *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193, 196 (4th Cir. 1977)).

Here, Defendant has defaulted, and Plaintiffs are entitled to a default judgment; therefore, Plaintiffs have demonstrated actual success on the merits. Moreover, without an audit of Defendant's payroll information Plaintiffs have no way to determine whether Defendant contributed the contractually required amount to Plaintiffs' Funds. If Defendant failed to sufficiently contribute to the Funds, then Plaintiffs as well as the covered employees and their beneficiaries would be irreparably harmed due to the loss of revenue and decreased value of the Funds. Next, there is no likelihood of harm to other interested persons if the requested injunction

is issued. Finally, the public interest weighs heavily in favor of granting the injunction. As evidenced by the legislative intent underlying ERISA and the LMRA, there is a significant public policy imperative in maintaining the solvency and stability of employee pension and benefit plans. To do so depends upon employers fulfilling their contractual and statutory obligations to contribute to the Funds. For these reasons, the undersigned finds the Plaintiffs are entitled to the injunctive relief they seek.

### Attorneys' Fees and Costs

Defendant is contractually and statutorily obligated to pay Plaintiffs attorneys' fees and costs in bringing this action. Pursuant to the Trust Document, Plaintiffs are entitled to collect attorneys' fees and costs incurred if legal counsel is engaged to enforce the Trust Document's audit provision. (Mem. Supp. at 11; Odell Decl., Exh. 7, Art. 5, Sec. 3). Section 5(F) of the Collection Policy also provides: "Employers that refuse to permit an audit in whole or in part may be subject to legal action without further notice, with attorneys' fees, audit charges and other costs assessed to the Employer." (Mem. Supp. at 11–12; Odell Decl., Exh. 8, Sec. 5(F)). Moreover, under Section 515 of ERISA, employers who are obligated to make contributions to multi-employer employee benefits plans must do so in accordance with the terms of the applicable collective bargaining agreement or plan. (*Id*. at 11–12). Because the Trust Document, the Collection Policy, and the CBA all require payment of attorneys' fees under these circumstances, the undersigned recommends reasonable attorneys' fees be awarded by the Court.

In addition, ERISA Section 502(g)(2)(D) provides that: "in any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant." (*Id*. at 12). Accordingly, reasonable attorneys' fees are also required

by statute.

Here, Plaintiffs seek $4,231.00 in attorneys' fees and $533.74 in legal costs expended in enforcing Defendant's compliance with the audit. (Mem. Supp. at 12; Bardes Decl. ¶¶ 5–6). Plaintiffs' request is supported by the Declaration of their counsel, Diana M. Bardes, Esquire. (*Id.*) Ms. Bardes' Declaration sets forth a reasonable hourly rate for partners, associates, and paralegals and the number of hours for which counsel seeks payment is appropriate given the nature of the dispute and the amount of time reasonably necessary to prosecute this action. (*Id.*) Counsel also provides an itemized list of expenses, all of which were appropriately incurred by Plaintiffs in furtherance of this litigation. (*Id.*) For these reasons, the undersigned finds Plaintiffs should be awarded the attorneys' fees and costs they seek.

### **Additional Remedies Depending on the Results of the Audit**

Under the facts of this case, an audit of Defendant's payroll information is the necessary first step in determining what, if any, additional damages are appropriate to award. Once the Plaintiffs have conducted the audit, they will be in a position to determine whether it is appropriate to petition the Court to award the financial damages they allege in their Amended Complaint, including delinquent contributions, interest on any delinquent contributions, liquidated damages, as well as any additional attorneys' fees and costs incurred by Plaintiffs.

### **Recommendation**

For the foregoing reasons, the undersigned United States Magistrate Judge recommends the Court GRANT Plaintiffs' Motion for Default Judgment. The undersigned further recommends the Court grant Plaintiffs' request for an injunction requiring Defendant to submit to an audit of its payroll records for the time period from July 1, 2017 to December 31, 2022. The undersigned further recommends the Court order the following:

(1) Plaintiffs serve a copy of the injunction on Defendant in accordance with Fed. R. Civ. P. 5(b)(2)(A) or (b)(2)(B) **and** (b)(2)(C);

(2) In addition to the injunction, Plaintiffs must also serve Defendant with a list of records and documents Defendant must provide in order for Plaintiffs to conduct the audit;

(3) Plaintiffs may only seek records and documents from Defendant necessary to determine whether Defendant fully complied with its obligation to make contributions to Plaintiffs' Funds;

(4) Plaintiffs must effect service within 21 days of the Court entering the injunction;

(5) Defendant must comply with the audit request within fourteen (14) days of service of the injunction and list of required records and documents;

(6) Within sixty (60) days of service of the injunction and list of required records and documents, Plaintiffs must file either a Notice with the Court stating they are not seeking any additional relief or a motion before the undersigned Magistrate Judge stating what additional relief they are requesting as well as the factual and legal basis for the relief they seek; and

(7) Plaintiffs be awarded attorneys' fees in the amount of $4,231.00 and costs in the amount of $533.74, which must be paid by Defendant within thirty (30) days of the Court's entry of the injunction.

**Notice**

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

May 29, 2024
Alexandria, Virginia